UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

VIKKI LEE,
2400 Seneca Street                                          SUMMONS
Apt. 328
Buffalo, New York 14210

        Plaintiff,

vs.

UNITED STATES OF AMERICA,
555 Fourth Street, NW
Washington, D.C. 20530.
                                                            Case No.

        Defendant.
_____

TO THE ABOVE-NAMED DEFENDANT:

     YOU ARE HEREBY SUMMONED to answer the Complaint in this action and
serve a copy of your Answer on the Plaintiff's attorney, name and address as indicated
below, within sixty (60) days after the service of this Summons, exclusive of the day of
service.   In case of your failure to answer, judgment may be taken against you by default
for the relief demanded in the Complaint.

Dated:     Buffalo, New York
           December 17, 2020

The Barnes Firm, P.C.

s/Derek J. Roller

_____

Derek J. Roller, Esq.
Attorneys for Plaintiff
Vikki Lee
500 Pearl Street
Suite 700
Buffalo, New York 14202
Tel. (716) 422-5905
derek.roller@thebarnesfirm.com

To:   US Attorney for Western District of New York
      Via Hand-Delivery
      138 Delaware Avenue
      Buffalo, New York 14202

      US Attorney General
      Via Registered/Certified Mail
      U.S. Department of Justice
      950 Pennsylvania Avenue, NW
      Washington, DC 20530-0001

      US Attorney
      Via Registered/Certified Mail
      Civil Process Clerk,
      555 Fourth Street, NW
      Washington, D.C. 20530

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

VIKKI LEE,

           Plaintiff,

vs.

UNITED STATES OF AMERICA,

           Defendant.
_____

COMPLAINT

Case No.

## **COMPLAINT**

The Plaintiff, Vikki Lee, by her attorneys, The Barnes Firm, P.C., for her Complaint against the Defendant, United States of America, pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680, states as follows:

## **INTRODUCTION**

1.      The Plaintiff, Vikki Lee, pursuant to the Federal Tort Claims Act (hereinafter "FTCA"), 28 U.S.C. §§ 2671, *et seq.*, and 28 U.S.C. § 1346(b)(1), seeks compensatory monetary damages for personal injuries, pain and suffering, and monetary loss caused by and arising from the negligence of the Defendant, United States of America (hereinafter "Defendant"), by and through its agents, servants and employees, in failing to adhere to the prevailing professional, medical and podiatric standards of care and treatment generally recognized as acceptable and appropriate by reasonably prudent

1

similar health care providers in the community in the course of providing care and treatment to the Plaintiff.

2.      Plaintiff has fully complied with the provisions of 28 U.S.C. § 2675 of the FTCA (see November 20, 2019 letter and Standard Form 95 attached as Exhibit 1).

3.      Plaintiff timely served notice of her claim less than two years after the incident forming the basis of the suit (see Exhibit 1) and Plaintiff is now filing this Complaint pursuant to 28 U.S.C. § 2401(b) within six (6) months after receiving the Department of Health and Human Services' September 9, 2020 notice of "final denial of administrative claim" (see Administrative Tort Claim Denial Letter attached as Exhibit 2).

4.      Plaintiff has exhausted the administrative remedies required pursuant to the FTCA as a condition of commencing this suit.

## PARTIES, JURISDICTION AND VENUE

5.      Plaintiff, at all times relevant herein, was a resident of the County of Erie and State of New York.

6.      Defendant, through its agency, the Department of Health and Human Services, at all times relevant herein, operated the Northwest Buffalo Community Health Care Center, Inc., d/b/a Neighborhood Health Center and/or Neighborhood Health Center Mattina (hereinafter "Neighborhood Health").

2

7.     Defendant, by and through its directors, officers, operators, administrators, employees, agents, servants and staff at Neighborhood Health, provided professional, medical and podiatric care and treatment to the general public, including Plaintiff, and held itself out as duly licensed, qualified and capable of rendering and providing adequate and proper medical and podiatric care and treatment to the general public, including Plaintiff, and for such purposes employed doctors, podiatrists, residents, fellows, physician assistants, nurses and other personnel, including podiatrists James Burruano, DPM (hereinafter "Dr. Burruano") and Magdalena De La Cruz, DPM (hereinafter "Dr. De La Cruz").

8.     At all times relevant herein, the directors, officers, operators, administrators, employees, agents, servants and staff at Neighborhood Health, including Dr. Burruano and Dr. De La Cruz, were employed by and/or acting on behalf of the Defendant and Defendant is responsible for the negligent acts of its employees and agents including Dr. Burruano and Dr. De La Cruz under *respondeat superior*.

9.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 in that this action arises under the laws of the United States of America and is premised on the acts and omissions of the Defendant acting under color of federal law.  This Court further has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1346(b) in that this is a claim against the Defendant for money damages, accruing on or after January 1, 1945, for personal injury caused by the negligent and wrongful acts and omissions of employees of the Defendant while acting within the

3

course and scope of their office or employment, under the circumstances where the

Defendant, if a private person, would be liable to the Plaintiff.

10.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1402(b) in

that this is the judicial district in which Plaintiff resides and in which the acts and

omissions forming the basis of Plaintiff's claims occurred.

## FACTUAL ALLEGATIONS

11.     On or about January 7, 2019, Plaintiff presented to the Mercy Hospital of

Buffalo ER at approximately 4:43 p.m.  Plaintiff complained of right lower extremity

pain after falling on a wet floor in her apartment.  Plaintiff stated that the fall occurred

around approximately 12:30 p.m. but she may have lost consciousness for several hours

after.  Plaintiff was unable to stand or support weight.  Physical exam found no obvious

deformity to the right ankle but there was some swelling and some bruising.  X-ray of the

tibia and fibula on the right, according to the report, found no fracture or dislocation and

were reported as unremarkable.  X-rays of the right foot, according to the report, were

unremarkable.  The x-rays were read/interpreted and reported on by Alberto C.

Benedicto, M.D., of Southtowns Radiology Associates, LLC. Plaintiff was eventually

discharged with a crutch and walking boot.

12.     Plaintiff followed up with a podiatrist at Neighborhood Health, Dr.

Burruano, on or about January 16, 2019.  Plaintiff had been wearing the walker boot

since Mercy Hospital on January 7, 2019.  Dr. Burruano was not able to review the x-rays

4

from Mercy Hospital yet but, upon information and belief, Dr. Burruano planned to
review the x-rays as soon as the Plaintiff signed up for "Healthylink," so as to allow Dr.
Burrano to review the x-rays, which Plaintiff did within a few days of the January 16,
2019 appointment).

13.     Dr. Burrano negligently failed to obtain his own x-rays and negligently
failed to follow up on reviewing the x-rays that Plaintiff had at Mercy Hospital of Buffalo

14.     Plaintiff next saw Christopher Biondolillo, M.D. (hereinafter "Dr.
Biondolillo") in the internal/family medicine department at Neighborhood Health on or
about February 4, 2019.  Plaintiff complained of pain in the right foot.  Dr. Biondolillo
ordered follow-up x-rays which were done at Mercy Hospital on or about February 4,
2019.

15.     The February 4, 2019 x-ray was compared to the January 7, 2019 x-ray by
the radiologist at Mercy Hospital, Paul F. Pizzella, M.D.  According to the February 4,
2019 x-ray report, there was interval lateral displacement of the second and third
metatarsals in relationship to their adjacent cuneiforms concerning for dislocation and
Lisfranc injury and comminution of prior seen fracture at the base of the second
metatarsal with displacement of fragments.

16.     Plaintiff next saw another podiatrist at Neighborhood Health, Dr. De La
Cruz, for a pre-op exam and visit on or about February 13, 2019.  Dr. De La Cruz
indicated in her note that the images were reviewed in the "Healthylink" site and that the

January 7 films "showed comminuted fracture of the base of the 2nd met base and diastasis of the lisfrancs joint notes" and the February 4, 2019 x-ray films "showed completely dislocation of the lesser met with increase in comminuted fracture at the base of the 2nd metatarsal base…there is an increase is diastasis at the Lisfranc's joint comparare to the Jan 7th rays…no cuboid fracture noted…there is a disruption noted to the 1st met cuneiform joint….Lisfranc injury Hardcastle Type 2B." Dr. De La Cruz planned to perform a surgery - an open reduction internal fixation of dislocation of the right foot.

17. Dr. De La Cruz performed said surgery at Kenmore Mercy Hospital on or about February 15, 2019. However, Dr. De La Cruz negligently failed to obtain more detailed imaging, such as a CT scan or MRI, to determine the extent of the involvement of the soft tissues before performing the surgery – it cannot be properly performed with it – and Dr. De La Cruz negligently failed to fixate the first metatarsal to the first cuneiform and failed to do anything to achieve alignment and fixation of the third through fifth metatarsals to their cuneiforms.

18. Plaintiff saw Dr. De La Cruz in follow up on February 19, 2019 and February 26, 2019.

19. Plaintiff then saw another podiatrist at Neighborhood Health, Jacob Meisenburg, DPM (hereinafter "Dr. Meisenburg"), on March 15, 2019. Dr. Meisenburg

6

ordered x-rays and Plaintiff was seen again at Mercy Hospital on March 25, 2019 complaining of foot pain and the x-rays were taken.

20.     Plaintiff saw Dr. Meisenburg at Neighborhood Health to follow up and review the x-rays on April 1, 2019.  Dr. Meisenburg wrote that the x-rays showed "interval healing noted at fracture sites…hardware securely intact, no evidence of failure or backing out."

21.     Plaintiff saw Dr. Biondolillo again on April 10, 2019 for foot pain and Dr. Meisenburg on April 24, 2019 for follow-up.

22.     Further x-rays were taken at Mercy Hospital of Buffalo on April 29, 2019.

23.     Plaintiff saw Dr. Meisenburg on May 7, 2019 to follow up on these x-rays and she complained that her foot looked crooked and that there was a huge bump on the inside. Dr. Meisenburg, upon his review of the x-rays, wrote that the fracture site appeared fully healed but the patient will require eventual removal of the hardware as well as potential further surgery to realign the foot and the need for future surgery was discussed as involving a proposed "midfoot fusion, gastric."

24.     Plaintiff's foot remained misaligned and was subject to further mis-alignment following Dr. De La Cruz's February 15, 2019 surgery because Dr. De La Cruz did not properly fixate the first metatarsal to the first cuneiform and did not do anything to achieve alignment and fixation of the third through fifth joints.  Moreover, Dr. Burruano's failure to timely obtain his own x-rays, or follow up on the x-ray of

7

January 7, 2019 at Mercy Hospital, allowed the Lisfranc fracture/dislocation to worsen, requiring a more extensive surgery than it otherwise would have.

25.     The failure to timely treat the injury and follow up on diagnosis and treatment by Dr. Burruano as described above, and then the surgery performed improperly by Dr. De La Cruz as described above, caused Plaintiff to require further treatment and surgeries and has made her long-term prognosis with respect to continuing pain and traumatic arthritis and disability much worse than it otherwise would have been from the January 7, 2019 injury alone had it been treated properly by Dr. Burruano and Dr. De La Cruz.

26.     Plaintiff subsequently treated with Christopher Ritter, M.D. following the treatment by Dr. Burruano and Dr. De La Cruz.  Plaintiff saw Dr. Ritter on June 11, 2019.  Plaintiff had ongoing persistent pain, could not ambulate with her boot on, had significant pain and swelling with any attempt to stand, and was still using a wheelchair for mobilization.  Upon Dr. Ritter's examination on this date, he noted that the forefoot showed a significant adduction deformity and Dr. Ritter's x-rays showed that the hardware had shifted (because the 1st and 3rd, 4th and 5th joints were not aligned and reduced by Dr. De La Cruz) and that the midfoot joints were not well reduced.  This, as Dr. Ritter explained in his record, caused Plaintiff to heal in malalignment with continued subluxation of the first, second, third and fourth metatarsal cuneiform and cuboid joints. Dr. Ritter explained to Plaintiff at this visit that there had been at least a 3-4mm shift because the bones were not lined up and fixated properly in the surgery by Dr. De La

8

Cruz.  Consequently, Dr. Ritter recommended surgical revision in the form of fusion with bone grafting.

27.     Dr. Ritter performed that surgery on July 17, 2019 which was a right foot mid-fusion with tibial bone grafting.  In his operative report, Dr. Ritter documented his findings that there were 2 broken screws and a nonunion at the second metatarsal base and the third metatarsal cuneiform joint was dislocated by 50%.  At the first metatarsal joint, Dr. Ritter noted the extensive arthritic changes that had already occurred with subluxation (due to Dr. De La Cruz's failure to fixate this joint properly).  Dr. Ritter's operative report goes into detail of the extensive osteotomy, bone grafts, and fusions performed in his surgery.

28.     Plaintiff continued to follow up with Dr. Ritter after this surgery into September, 2019.  At a visit of September 25, 2019, Dr. Ritter reviewed x-rays which showed that the fusion was still healing but Ms. Lee remained in some significant pain.

29.     Plaintiff saw Dr. Ritter again on November 21, 2019, at which time Plaintiff remained in significant pain.  Palpable hardware along the first metatarsal was noted upon examination along with osteophyte/bone spur over the great toe.  Yet another surgery, removal of the first TMT plate and hardware along with cheilectomy (removal of bone spur), was discussed.

30.     Plaintiff returned to see Dr. Ritter for follow up on January 9, 2020.  Dr. Ritter ordered a CT scan to assess the healing of the fusion.  This CT scan of January 17,

2020, shows 30-40% bony union of the first tarsometatarsal arthrodesis and 10% dorsal bony union of the second and third tarsometatarsal arthrodesis, ununited fourth and fifth metacarpal neck fractures, and multiple joint midfoot and forefoot degenerative osteoarthritis most marked fourth and fifth metatarsocuneiform joints.

31.    Dr. Ritter scheduled Plaintiff for a hardware removal and cheilectomy surgery which was performed on or about February 26, 2020.

32.    Plaintiff has continued to treat with Dr. Ritter following the February 26, 2020 surgery and has attended physical therapy.  Plaintiff has also continued to treat with Dr. Biondolillio and Neighborhood Health and was most recently seen on July 30, 2020, at which time Plaintiff reported major pain, trouble sleeping, and ongoing foot pain and back pain.  Plaintiff described her pain as low back connected to the right lower extremity and that the pain is exacerbated by weight bearing and use of the extremity and standing. Plaintiff had also been recently seen on July 20, 2020 to follow up on a head injury that occurred when she was walking and lost her balance resulting in a fall and head injury. Plaintiff suffered a laceration and was seen on July 20, 2020, for staple removal as per the record.  Other significant entries include that of June 10, 2020, indicating that Plaintiff has limited ambulation due to the back pain and foot issues and that she is unstable on her feet and requires a wheelchair, and that of February 17, 2020, indicating that Plaintiff was suffering from a pressure injury on her left buttock, stage 2, resulting from limited mobility due to foot pain.  Plaintiff has been unable to ambulate properly due to the

10

condition of the right foot for a long time and she has been bound to a wheelchair and has suffered an increase in back pain and a pressure injury to her right buttock.

33.    Due to the negligence of Defendant, and its agents, servants and employees, including Dr. Burruano and Dr. De La Cruz, as set forth above, Plaintiff has been caused to suffer serious and permanent personal injuries, has been forced to endure pain and suffering and will continue to endure pain and suffering, and has and will continue to suffer a loss of enjoyment of life, all caused by and related to the following: deformity of right foot and toes; malunion, failed fusion, failed fixation, and malunion/non-union and migration of the right foot metatarsals, all of which caused deformity of the right foot and toes and sequela thereof as set forth herein; the above having caused Plaintiff to require a further corrective surgeries as set forth herein; and also causing loss of and impairment of balance and of ability to ambulate due to the deformity of the right foot and toes which has caused Plaintiff to fall and sustain injury; loss of range of motion right foot and toes; pain and sensitivity on the right foot and toes; swelling and pain right foot and toes; pain upon ambulation; inability to properly use the right foot to ambulate; having to use assistive devices to ambulate; restricting the ability to ambulate and confining Plaintiff to a wheelchair which has also caused Plaintiff to suffer from weight gain and pressure injury; and all of the above requiring shoe-wear modification for the right and loss of ability to wear any shoes with heels; all of the above causing Plaintiff right foot and toe pain, back pain, hip pain and knee pain bilaterally, all due to the manner in which she is forced to ambulate, along with weight gain due to inability to be mobile; all of the above

impairing Plaintiff's ability to ambulate and causing instability which has; and all of the above impairing Plaintiff's ability to engage in activities of daily living and lose enjoyment of life.  The negligence of the Defendant as described herein above has caused Plaintiff's right foot to become unstable and Plaintiff is in significant pain at all times with a restricted range of motion, all of which causes Plaintiff to be unable to stand for an extended time, unable to walk properly, unable to run and engage in activity, unable to wear certain shoes, and has caused grotesque scarring and deformity of her right foot; and all of the foregoing will require Plaintiff to require podiatric treatment for the rest of her life, including being placed in a supportive orthotic device, and limit Plaintiff to restricted ambulation but the orthotic will not relieve all of Plaintiff's symptoms associated with the injuries and conditions; and all of the above injuries are permanent and progressive and have caused permanent pain and suffering and have required Plaintiff to take various prescription pain medications and/or other medications.

34.     In addition to the elements of pain and suffering as set forth above, Plaintiff is a New York State Medicaid recipient and HMS, Inc., as recovery contractor for New York State Medicaid, has advised that Medicaid has paid $37,539.22 for medical expenditures on behalf of Plaintiff which HMS believes to be associated with the claims in this case and HMS has asserted a recovery right in the amount of $37,539.22 (which is an interim amount, subject to increase as Plaintiff requires further treatment related to the claims in this case).

## CAUSES OF ACTION

## FIRST - NEGLIGENCE

35.     Plaintiff repeats and realleges each and every allegation above as if more fully set forth herein.

36.     On or about January 16, 2019, and continuing through on or about May 7, 2019, the Plaintiff came under the medical and podiatric care and treatment of the Defendant and its agents, servants and employees, including Dr. Burruano and Dr. De La Cruz, who were acting within their respective capacities and scopes of employment for Defendant.

37.     At all times relevant herein, Defendant and its agents, servants and employees, including Dr. Burruano and Dr. De La Cruz, had a duty to provide medical and podiatric care and treatment to Plaintiff consistent with the reasonable degree of knowledge and skill that is expected of an average podiatrist in the medical community.

38.     The care and treatment rendered by the Defendant, through its agents, servants and employees, including Dr. Burruano and Dr. De La Cruz, to Plaintiff, as set forth above, was rendered in a negligent manner constituting deviations from accepted standards of medical and podiatric care and treatment.

13

39.     By reason of this negligence and deviations from the accepted standards of medical and podiatric care and treatment by the Defendant, and its agents, servants and employees, including Dr. Burruano and Dr. De La Cruz, the Plaintiff was caused to sustain and will continue to sustain personal injuries, pain and suffering, and monetary loss as set forth above.

40.     The acts and/or omissions set forth above would constitute a claim under the law of the State of New York.

41.     The Defendant is liable pursuant to 28 U.S.C. § 1346(b)(1).

## SECOND   NEGLIGENT HIRING

42.     Plaintiff repeats and realleges each and every allegation above as if more fully set forth herein.

43.     All times relevant herein, the Defendant had a duty to hire competent employees, agents and staff, including podiatrists, in order to meet the medical and podiatric standards of care and treatment that Defendant's patients, including Plaintiff, were entitled to receive.

44.     The Defendant knew, or should have known, that the medical and podiatric staff of Neighborhood Health, including Dr. Burruano and Dr. De La Cruz, were not properly trained and/or supervised in a manner necessary to meet the medical and

podiatric standards of care that Defendant's patients, including Plaintiff, were entitled to receive.

45.     The Defendant therefore breach its duty by negligently hiring incompetent, inexperienced and/or unqualified medical and podiatric personnel, including Dr. Burrano and Dr. De La Cruz, and Defendant was negligent in allowing Dr. De La Cruz to treat Plaintiff and attempt to perform the surgery upon Plaintiff as set forth more fully above which Dr. De La Cruz was not competent or qualified to perform.

46.     By reason of this negligence, the Plaintiff was caused to sustain and will continue to sustain personal injuries, pain and suffering, and monetary loss as set forth above.

47.     The acts and/or omissions set forth above would constitute a claim under the law of the State of New York.

48.     The Defendant is liable pursuant to 28 U.S.C. § 1346(b)(1).

**<u>PRAYER FOR RELIF</u>**

WHEREFORE, the Plaintiff demands judgment against Defendant on the above causes of action for personal injuries, pain and suffering, and monetary loss totaling $6.0 million and costs and attorneys' fees incurred in this action together with such further and additional relief at law or in equity as this Court may deem proper.

15

Dated:  Buffalo, New York
    December 17, 2020

         The Barnes Firm, P.C.

         s/Derek J. Roller

         _____
         Derek J. Roller, Esq.
         Attorneys for Plaintiff
         Vikki Lee
         500 Pearl Street
         Suite 700
         Buffalo, New York 14202
         Tel. (716) 422-5905
         derek.roller@thebarnesfirm.com


To: US Attorney for Western District of New York
  Via Hand-Delivery
  138 Delaware Avenue
  Buffalo, New York 14202

  US Attorney General
  Via Registered/Certified Mail
  U.S. Department of Justice
  950 Pennsylvania Avenue, NW
  Washington, DC 20530-0001

  US Attorney
  Via Registered/Certified Mail
  Civil Process Clerk,
  555 Fourth Street, NW
  Washington, D.C. 20530

<u>Certificate of Merit</u>

STATE OF NEW YORK   )
COUNTY OF ERIE      ) ss.:
CITY OF BUFFALO     )

     Derek J. Roller, Esq., being duly sworn, deposes and says:

     1.     I am an attorney at law duly licensed to practice in the State of New York and am an employee of The Barnes Firm, attorneys for the Plaintiff herein, and as such, I am fully familiar with the facts and circumstances giving rise to this law suit.

     2.     This Certificate is executed in compliance with §3012-a of the Civil Practice Law and Rules of the State of New York.

     3.     Your deponent has reviewed the facts of this case and has consulted with one or more duly licensed independent podiatrists in connection with the merits of this action.

     4.     It is the belief of your deponent that the podiatrists consulted are knowledgeable in the relevant issues this action sets forth.  Based upon this review and consultation, there is a reasonable basis for the commencement of this action.

                  s/Derek J. Roller
                _____
                  Derek J. Roller, Esq.

Sworn to before me this
17th day of December, 2020

s/Stacie Leigh Duderwick
_____
Notary Public, State of New York
Qualified in Erie County
My Commission Expires December 30, 2021

EXHIBIT 1

# FITZGERALD & ROLLER, P.C.

BRIAN P. FITZGERALD
DEREK J. ROLLER

ATTORNEYS AND COUNSELORS AT LAW
509 LIBERTY BUILDING
424 MAIN STREET
BUFFALO, NEW YORK 14202-3502
(716) 852-2000
TELEFAX: (716) 852-2002

November 20, 2019

James Burruano, DPM
Neighborhood Health Center
d/b/a Northwest Buffalo Community
    Health Care Center, Inc.
4233 Lake Avenue
Blasdell, New York 14219

Magdalena De La Cruz, DPM
Neighborhood Health Center Mattina
d/b/a Northwest Buffalo Community
    Health Care Center, Inc.
300 Niagara Street
Buffalo, New York 14201

Re:   Lee v. Northwest Buffalo Community Health Care Center, Inc.
      Our File No.  6743

To Whom It May Concern:

Please accept this letter as notice of a claim for personal injury under the Federal
Tort Claims Act.  I set forth the information required pursuant to SF 95 herein below and
enclose form SF 95 signed by the claimant, Ms. Vikki Lee, and a Verification of this
letter.

   1. Appropriate Federal Agency:

      James Burruano, DPM
      Neighborhood Health Center
      d/b/a Northwest Buffalo Community Health Care Center, Inc.
      4233 Lake Avenue
      Blasdell, New York 14219

James Burruano, D.P.M.
Magdalena De La Cruz, D.P.M.
Neighborhood Health Center
d/b/a Northwest Buffalo Community Health Care Center, Inc.
November 20, 2019
Page 2

Magdalena De La Cruz, DPM
Neighborhood Health Center Mattina
d/b/a Northwest Buffalo Community Health Care Center, Inc.
300 Niagara Street
Buffalo, New York 14201

2. <u>Name, address of claimant, and claimant's personal representative:</u>

Vikki Lee
2400 Seneca Street, Apt. 123
Buffalo, New York 14210

Derek J. Roller, Esq.
Fitzgerald & Roller, P.C.
424 Main Street, Suite 509
Buffalo, New York 14202

3. <u>Type of Employment:</u>

Not applicable.

4. <u>Date of Birth:</u>

Vikki Lee's date of birth is: ███████ 1969.

5. <u>Marital Status:</u>

Single.

6. <u>Date and Day of Accident:</u>

See description below in paragraph 8.

7. <u>Time:</u>

See description below in paragraph 8.

James Burruano, D.P.M.
Magdalena De La Cruz, D.P.M.
Neighborhood Health Center
d/b/a Northwest Buffalo Community Health Care Center, Inc.
November 20, 2019
Page 3

8. <u>Basis of Claim</u>:

This claim is for personal injury resulting from medical and podiatric care and treatment rendered to Vikki Lee by James Burruano, DPM, and Magdalena De La Cruz, DPM, employees of the above referenced Neighborhood Health Centers, DBA Northwest Buffalo Community Health Care Center, Inc.  The care and treatment rendered by Dr. Burrano and Dr. De La Cruz fell below and deviated from accepted standards of care and treatment as explained below which resulted in significant injury to Ms. Lee as also explained below.

On January 7, 2019, Ms. Lee presented to the Mercy Hospital of Buffalo ER at approximately 4:43 p.m.  She complained of right ankle pain after falling on a wet floor in her apartment.  She stated that the fall occurred around approximately 12:30 p.m. but she may have lost consciousness for several hours after.  She was unable to stand or support weight.  Physical exam found no obvious deformity to the right ankle but there was some swelling and some bruising.  X-ray of the tibia and fibula on the right, according to the report, found no fracture or dislocation and were reported as unremarkable.  X-rays of the right foot, according to the report, were unremarkable.  The x-rays were read/interpreted and reported on by Alberto C. Benedicto, M.D., of Southtowns Radiology Associates, LLC.  Ms. Lee was eventually discharged with a crutch and walking boot.

Ms. Lee followed up with a podiatrist at Neighborhood Health Center, Dr. James Burruano, on January 16, 2019.  Ms. Lee had been wearing the cam walker boot since Mercy Hospital on January 7, 2019.  Dr. Burruano was not able to review the x-ray from Mercy Hospital yet (but according to discussions between Dr. Burruano and Ms. Lee, Dr. Burruano was supposed to view the x-ray as soon as the patient signed up for "Healthylink" which she did within a few days of this appointment).  Dr. Burrano negligently failed to obtain his own x-ray and follow up on reviewing the x-ray that Ms. Lee had at Mercy Hospital of Buffalo

Ms. Lee saw Christopher Biondolillo, M.D., at Neighborhood Health on February 4, 2019.  Ms. Lee was there complaining of pain of the right foot.  Dr. Biondolillo is in the internal/family medicine department at Neighborhood Health and I believe Ms. Lee just saw him for a visit related to the foot pain.  Dr. Biondolillo ordered a follow-up x-ray which was done at Mercy Hospital on February 4, 2019.

The February 4, 2019 study was compared on the January 7, 2019 study by the radiologist Paul F. Pizzella, M.D.  According to this February 4, 2019 report, there was

James Burruano, D.P.M.
Magdalena De La Cruz, D.P.M.
Neighborhood Health Center
d/b/a Northwest Buffalo Community Health Care Center, Inc.
November 20, 2019
Page 4

interval lateral displacement of the second and third metatarsals in relationship to their adjacent cuneiforms concerning for dislocation and Lisfranc injury and comminution of prior seen fracture at the base of the second metatarsal with displacement of fragments.

Ms. Lee next saw another podiatrist at Neighborhood Health, Dr. Magdalena De La Cruz, DPM, for a pre-op exam and visit on February 13, 2019.  De La Cruz indicated in her note that the images were reviewed in the Healthylink site and that the January 7 films "showed comminuted fracture of the base of the 2nd met base and diastasis of the lisfrancs joint notes" and the February 4 films "showed completely dislocation of the lesser met with increase in comminuted fracture at the base of the 2nd metatarsal base…there is an increase is diastasis at the Lisfranc's joint comparare to the Jan 7th rays…no cuboid fracture noted…there is a disruption noted to the 1st met cuneiform joint….Lisfranc injury Hardcastle Type 2B."  The planned surgery was an open reduction internal fixation of dislocation of the right foot.

De La Cruz, DPM, performed surgery at Kenmore Mercy Hospital on February 15, 2019.  However, Dr. De La Cruz negligently failed to obtain more detailed imaging, such as a CT scan or MRI, to determine the extent of the involvement of the soft tissues before performing the surgery – it cannot be properly performed with it – and Dr. De La Cruz negligently failed to fixate the first metatarsal to the first cuneiform and failed to do anything to achieve alignment and fixation of the third through fifth metatarsals to their cuneiforms.

Ms. Lee saw De La Cruz in follow up on February 19, 2019 and February 26, 2019.

Ms. Lee then saw another podiatrist at Neighborhood Health, Jacob Meisenburg, on March 15, 2019. Dr. Meisenburg ordered x-rays and Ms. Lee seen again at Mercy Hospital on March 25, 2019 complaining of foot pain and the x-rays were taken.

Ms. Lee saw Dr. Meisenburg at Neighborhood Health to follow up and review the x-rays on April 1, 2019.  Dr. Meisenburg wrote that the x-rays showed "interval healing noted at fracture sites…hardware securely intact, no evidence of failure or backing out."

Ms. Lee saw Dr. Biondolillo on April 10, 2019 for foot pain and Dr. Meisenburg on April 24, 2019 for follow-up.

Further x-rays were taken at Mercy Hospital of Buffalo on April 29, 2019.

James Burruano, D.P.M.
Magdalena De La Cruz, D.P.M.
Neighborhood Health Center
d/b/a Northwest Buffalo Community Health Care Center, Inc.
November 20, 2019
Page 5

Ms. Lee saw Dr. Meisenburg on May 7, 2019 to follow up on these x-rays and she complained that her foot looked crooked and that there was a huge bump on the inside. Dr. Meisenburg, upon his review of the x-rays, wrote that the fracture site appeared fully healed but the patient will require eventual removal of the hardware as well as potential further surgery to realign the foot and the need for future surgery was discussed as involving a proposed "midfoot fusion, gastric."

Ms. Lee's foot remained misaligned, was subject to further mis-alignment following Dr. De La Cruz's February 15, 2019 surgery because Dr. De La Cruz did not properly fixate the first metatarsal to the first cuneiform and did not do anything to address the third through fifth joints.  Obviously, that surgery was not going to be successful.  Moreover, Dr. Burruano's failure to timely obtain his own x-rays, or follow up on the x-ray of January 7, 2019 at Mercy Hospital, allowed the Lisfranc fracture/dislocation to worsen, requiring a more extensive surgery than it otherwise would have.  The failure to timely treat the injury, and then the improper surgery, caused Ms. Lee to require further treatment and surgery and has made her long-term prognosis with respect to continuing pain and traumatic arthritis much worse than it would have been.

Ms. Lee eventually consulted with Christopher Ritter, M.D.  She saw Dr. Ritter on June 11, 2019 and significant notes in this record include ongoing persistent pain, cannot ambulate with her boot on, significant pain and swelling with any attempt to stand, still uses a wheelchair for mobilization.  Upon Dr. Ritter's examination on this date, he noted that the forefoot showed a significant adduction deformity and Dr. Ritter's x-rays showed that the hardware had shifted (because the 1st and 3rd, 4th and 5th joints were not aligned and reduced by Dr. De La Cruz) and that the midfoot joints were not well reduced (which I explain above).  This, as Dr. Ritter explains, caused Ms. Lee to heal in malalignment with continued subluxation of the first, second, third and fourth metatarsal cuneiform and cuboid joints.  Dr. Ritter explained to Ms. Lee at this visit that there had been at least a 3-4mm shift because the bones were not lined up and fixated properly in the surgery by Dr. De La Cruz.  Consequently, Dr. Ritter recommended surgical revision in the form of fusion with bone grafting.

Dr. Ritter performed the surgery on July 17, 2019 which was a right foot midfusion with tibial bone grafting.  In his operative report, Dr. Ritter documented his findings that there were 2 broken screws and a nonunion at the second metatarsal base and the third metatarsal cuneiform joint was dislocated by 50%.  At the first metatarsal joint, Dr. Ritter noted the extensive arthritic changes that had already occurred with subluxation (due to Dr. De La Cruz's failure to fixate this joint properly).  Dr. Ritter's

James Burruano, D.P.M.
Magdalena De La Cruz, D.P.M.
Neighborhood Health Center
d/b/a Northwest Buffalo Community Health Care Center, Inc.
November 20, 2019
Page 6

operative report goes into detail of the extensive osteotomy, bone grafts, and fusions performed in his surgery.

Ms. Lee continued to follow up with Dr. Ritter after this surgery into September, 2019. At a visit of September 25, 2019, Dr. Ritter reviewed x-rays which showed that the fusion was still healing but Ms. Lee remained in some significant pain.

Ms. Lee continues to treat with Dr. Ritter and, currently, as shown in the enclosed photographs from November 14, 2019, her right foot remains swollen and deformed. Ms. Lee understands that she will likely need an additional surgery soon to remove hardware.

I enclosed herein on CD the following referenced above:

- Mercy Hospital of Buffalo medical record containing medical records and/or imaging reports of the following dates:
  - January 7, 2019;
  - February 4, 2019;
  - February 12, 2019;
  - February 15, 2019;
  - March 25, 2019; and
  - April 29, 2019.

- X-rays and imaging reports on CD from Mercy Hospital and Kenmore Mercy Hospital including:
  - January 7, 2019 x-rays including right ankle and right foot;
  - February 4, 2019 x-ray right foot;
  - February 15, 2019 x-ray right foot/intra-operative fluoroscopy;
  - March 25, 2019 x-ray right foot; and
  - April 29, 2019 x-ray right foot.

- Neighborhood Health Center medical records dated January 16, 2019 through May 7, 2019.

- Three photographs taken January 11, 2019.
- Kenmore Mercy Hospital record of February 15, 2019 surgery.

- Erie County Medical Center ("ECMC") medical/surgical record of July 17, 2019.

James Burruano, D.P.M.
Magdalena De La Cruz, D.P.M.
Neighborhood Health Center
d/b/a Northwest Buffalo Community Health Care Center, Inc.
November 20, 2019
Page 7

- X-ray of right foot on CD from ECMC dated July 17, 2019.

- Dr. Christopher Ritter office record, dated June 11, 2019 to September 25, 2019; and

- Four photos taken November 14, 2019.

9. <u>Property Damage</u>:

Not applicable.

10. <u>Personal Injury/Wrongful Death</u>:

The injuries forming the basis for this claim, in addition to the information above,

include the following:

- Deformity of right foot and toes;

- Malunion, failed fusion, failed fixation, and malunion/non-union and migration of the right foot metatarsals, all of which caused deformity of the right foot and toes and sequela thereof as set forth herein;

- The above having caused Ms. Lee to require a further corrective surgery by Dr. Ritter as set forth herein;

- Loss of and impairment of balance and of ability to ambulate due to the deformity of the right foot and toes;

- Loss of range of motion right foot and toes;

- Pain and sensitivity on the right foot and toes;

- Swelling and pain right foot and toes;

- Pain upon ambulation;

- Inability to properly use the right foot to ambulate;

James Burruano, D.P.M.
Magdalena De La Cruz, D.P.M.
Neighborhood Health Center
d/b/a Northwest Buffalo Community Health Care Center, Inc.
November 20, 2019
Page 8

- Having to use assistive devices to ambulate and all of the above requiring shoe-wear modification for the right and loss of ability to wear any shoes with heels;

- All of the above causing Ms. Lee right foot and toe pain, back pain, hip pain and knee pain bilaterally, all due to the manner in which she is forced to ambulate, along with weight gain due to inability to be mobile;

- All of the above impairing Ms. Lee's ability to ambulate and engage in activities of daily living;

- All of the above requiring a future surgery or surgeries to correct said deformities;

- All of the above causing a permanent condition in Ms. Lee of her right foot being unstable and she is in significant pain at all times with a restricted range of motion, and all of which causes Ms. Lee to be unable to stand for an extended time, unable to walk properly, unable to run and engage in activity, unable to wear certain shoes, and has caused grotesque scarring and deformity of her right foot; and

- All of the foregoing will require Ms. Lee to require podiatric treatment for the rest of her life, including being placed in a supportive orthotic device, and limit Ms. Lee to restricted ambulation but the orthotic will not relieve all of plaintiff's symptoms associated with the injuries and conditions; and

- All of the above injuries are permanent and progressive and have caused permanent pain and suffering and have required Ms. Lee to take various prescription pain medications and/or other medications.

11. <u>Witnesses</u>:

Witnesses include the claimant, Ms. Lee, and those identified above and in the medical records enclosed herein.

12. <u>Amount of Claim (12b. Personal Injury and 12d. Total)</u>:

The competent evidence as explained above, substantiated herein by the enclosed medical records, support a claim for damages in the sum of $6.0 Million.

James Burruano, D.P.M.
Magdalena De La Cruz, D.P.M.
Neighborhood Health Center
d/b/a Northwest Buffalo Community Health Care Center, Inc.
November 20, 2019
Page 9

13. <u>Signature of Claimant (13a and 13b Phone Number)</u>:

See attached SF 95.

14. <u>Date of Signature</u>:

See attached SF 95.

15. <u>Insurance Coverage</u>:

Although we think this section is inapplicable, as this case does not involve vehicle or property damage, please be specifically advised that with respect to possible subrogation and/or lien rights, Ms. Lee's medical expenses for some or all of the treatment rendered above has been paid for by and through her New York State Medicaid and/or associated health insurance coverage through Independent Health and we are endeavoring to determine if there will be any recovery right associated with same.

16. Not applicable.

17. Not applicable.

18. Not applicable.

19. Not applicable.

Very truly yours,

Derek J. Roller

DJR/ec

Enclosures

## VERIFICATION

STATE OF NEW YORK   )
COUNTY OF ERIE        ) ss.:
CITY OF BUFFALO      )

Vikki Lee, being duly sworn, deposes and says:

I am the Claimant herein; I have read the foregoing SF95 Form and accompanying letter of Derek J. Roller, Esq. dated November 20, 2019 and know the contents thereof; the same is true to my own knowledge except as to the matters therein stated to be alleged upon information and belief and as to those matters I believe it to be true.

_Vikki E. Lee_
Vikki Lee

Sworn to before me this 20 day of November, 2019.

_Ellen K. Coyle_
Notary Public

ELLEN K. COYLE
NOTARY PUBLIC - STATE OF NEW YORK
NO. 01CO6107591
QUALIFIED IN ERIE COUNTY
COMMISSION EXPIRES APRIL 5, 20____

| CLAIM FOR DAMAGE, INJURY, OR DEATH | **INSTRUCTIONS:** Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|

| 3. TYPE OF EMPLOYMENT<br>☐ MILITARY  ☐ CIVILIAN | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

| 11. | WITNESSES |
|---|---|

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|

| 12. (See instructions on reverse). | AMOUNT OF CLAIM (in dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| *Victor E. Lee* | | |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction
Previous Edition is not Usable

95-109

NSN 7540-00-634-4046

STANDARD FORM 95 (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

15. Do you carry accident Insurance?  ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.  ☐ No

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible?  ☐ Yes  ☐ No   17. If deductible, state amount.

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).

19. Do you carry public liability and property damage insurance?  ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).  ☐ No

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

### Complete all items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

DAMAGES IN A <u>SUM CERTAIN</u> FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN <u>TWO YEARS</u> AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

(a)  In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b)  In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c)  In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d)  **Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.**

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
   A.  *Authority:*  The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B.  *Principal Purpose:*  The information requested is to be used in evaluating claims.
C.  *Routine Use:*  See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D.  *Effect of Failure to Respond:*  Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

## PAPERWORK REDUCTION ACT NOTICE

This notice is <u>solely</u> for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC  20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

**STANDARD FORM 95** REV. (2/2007) **BACK**

EXHIBIT 2



**DEPARTMENT OF HEALTH & HUMAN SERVICES**

Office of the General Counsel
General Law Division/General Law Division
Claims Office
330 C Street, S.W.
Switzer Building, Suite 2100
Washington, D.C. 20201

September 9, 2020



**U. S. MAIL CERTIFIED - RETURN RECEIPT REQUESTED
(Article No. 7019 0700 0000 5319 8488)**

Derek J. Roller, Esq.
Fitzgerald & Rolier, P.C.
Attorneys and Counselors at Law
509 Liberty Building
424 Main Street
Buffalo, NY   14202

Re:   **Administrative Tort Claim of Vikki Lee, Claim No. 2020-0205**



Dear Mr. Roller:

On December 26, 2019, on behalf of your client, Vikki Lee, you filed an administrative tort claim under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(a), 2401(b), 2671-80, alleging, *inter alia*, that, from January 16, 2019 through April 2019, James Burruano, DPM, and Magdalena De La Cruz, DPM, employees of Northwest Buffalo Community Health Care Center, Inc., located in Buffalo, NY, failed to properly diagnose and treat Vikki Lee for right foot pain after falling on a wet floor in her apartment, resulting in misalignment of the bones in her foot, which required surgery to repair and caused permanent injuries.

The FTCA authorizes the settlement of any claim of money damages against the United States for, *inter alia,* injury or death caused by the negligent, or wrongful, act or omission of any employees of the Federal Government, while acting within the scope of employment.   Under the FTCA, said act or omission must be such that the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. 28 U.S.C. § 2672.

This letter constitutes the notice of final determination of your client's administrative tort claim, as required by 28 U.S.C. §§ 2401(b), 2675(a).   The administrative tort claim of Vikki Lee, is denied.   The evidence fails to establish that the alleged injuries were due to the negligent or wrongful act or omission of a federal employee acting within the scope of employment.

Derek J. Roller, Esq.
Re:   Claim No. 2020-0205
Pg. 2

If your client is dissatisfied with this determination, she is entitled to:

1.  File a written request with the Agency for reconsideration of the
    final determination denying the claim within six (6) months from the
    date of mailing of this determination (28 C.F.R. § 14.9); or

2.  File suit against the United States in the appropriate federal district court within
    six (6) months from the date of mailing of this determination (28 U.S.C.
    §2401(b)).

In the event your client request reconsideration, the Agency will review the claim within
six (6) months from the date the request is received.   If the reconsidered claim is denied, your
client may file suit within six (6) months from the date of mailing of the final determination.

Sincerely,

*Jennifer B. Smith/jca*

Jennifer B. Smith
Acting Deputy Associate General Counsel
Claims and Employment Law Branch